# STATE OF MICHIGAN

# COURT OF APPEALS

JACK E. POULSEN,

       Plaintiff-Appellant,

v

SHANNON M. VISSER,

       Defendant-Appellee,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellee.

UNPUBLISHED
June 8, 2017

No. 331925
Kalamazoo Circuit Court
LC No. 2014-000625-NI

Before: BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

This case concerns plaintiff's claim for first-party no-fault benefits against State Farm and third-party tort claim against Visser. State Farm was plaintiff's no-fault insurer on December 11, 2013 when plaintiff was rear-ended by Visser while he was waiting to make a right turn at an intersection. Visser moved for summary disposition against plaintiff alleging that he had failed to present sufficient evidence to create a genuine issue of material fact that he sustained a threshold injury. However, the trial court granted Visser's motion, not on the basis that plaintiff had failed to present evidence of a threshold injury, but on the basis that plaintiff had failed to present sufficient evidence that his injuries were caused by the motor vehicle accident. This ruling prompted State Farm to then move for summary disposition on plaintiff's first party claim, which the trial court granted relying substantially on the findings in its previous decision granting Visser summary disposition. Plaintiff now appeals as of right. We reverse.

Plaintiff's first party claim arises out of statute. *Atkins v Suburban Mobility Auth for Regional Transp*, 492 Mich 707, 718; 822 NW2d 522 (2012). The statute entitles plaintiff to benefits "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1). The "causal connection between the injury and the use of a motor vehicle" must be "more than incidental fortuitous, or 'but for.' " *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986). State Farm initially paid

-1-

benefits to plaintiff, but on December 9, 2014 it sent plaintiff a letter stating that it would "deny further personal injury protection benefits for cervical strain effective October 30, 2014 and concussion/TBI, L. Knee Strain, and Thoracic Strain effective April 3, 2014." Therefore, the issue regarding plaintiff's first party claim is whether any cervical injuries he experienced after October 30, 2014 and any knee or thoracic injuries he experienced after April 3, 2014 arose out of the motor vehicle accident.

Plaintiff's third party claim is a tort claim, *Atkins*, 492 Mich at 718, which, includes the requirement of causation, *Mick v Kent Co Sheriff's Dept*, 494 Mich 367, 390; 835 NW2d 545 (2013). Generally, a defendant's claim that the crash is not a proximate cause of plaintiff's limitations is one, like nearly all proximate cause questions, that is for the trier of fact to determine. See *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002) (stating that proximate cause is generally a factual issue). Only, "if reasonable minds could not differ regarding the proximate cause of the plaintiff's injury" should the court decide the issue as a matter of law." *Id*.

The initial burden of production on a motion for summary disposition is on the moving party, and this burden can be satisfied by demonstrating to the court either that the nonmoving party's evidence is insufficient to establish a question of fact on its claims or by submitting " 'affirmative evidence that negates an essential element of the nonmoving party's claim.' " *Quinto v Cross & Peters Co*, 451 Mich 358, 361-362; 547 NW2d 314 (1996), quoting *Celotex v Catrett*, 477 US 317, 331; 106 S Ct 2548; 91 L Ed 2d 265 (1986). The burden does not shift to the non-moving party until the moving party has first met its burden. *Id.* and *Skinner v Square D Co*, 445 Mich 153, 160; 516 NW2d 475 (1994). Neither defendant appears to allege that plaintiff's evidence is insufficient on its own to establish a question of fact on the issue of whether his injuries were caused by or arose out of the motor vehicle accident. Rather both defendants and the trial court rely heavily on an accident reconstruction report prepared by State Farm and on reports from State Farm's medical examiners. The trial court determined these documents negated the essential element of causation on both plaintiff's first party no-fault claim and its third party tort claim and that because plaintiff did not present any evidence rebutting these documents both defendants were entitled to summary disposition.

However, neither the accident reconstruction reports nor the reports submitted by State Farm's medical examiners preclude the existence of an issue of material fact on the issue of causation, and so they do not negate an essential element of plaintiff's claim. State Farm's medical examiner, Dr. Zafar, reported in September 2014, three months before suit was filed that "given the chronology, description of events and symptoms, it is likely that the motor vehicle accident resulted in a whiplash, post-concussive syndrome." Zafar stated that "the current symptomatology of headaches, neck pain, and cognitive issues may be considered to cause a temporary impairment as a result of the December 11, 2013 accident." State Farm then hired a company that prepares accident reconstruction reports. However, contrary to the claims of defendants and the trial court, the accident reconstruction report did not say anything about the cause of plaintiff's injuries. It merely concluded that "the forces and motions experienced by [plaintiff] were minimal and consistent with simple, routine physical tasks." Whether these forces resulted in an injury to plaintiff is a medical question, not an engineering one. The report did not preclude a finding that minimal forces consistent with simple, routine physical tasks could have caused plaintiff's injuries. Even after reviewing the engineering report, all Zafar was

able to state is that if the report's conclusions were accepted, it would be "difficult" to correlate plaintiff's injuries to the accident and that it was "questionable" whether the low degree of impact could cause an "ongoing clinical impairment." None of these conclusions remove the possibility that plaintiff had some injuries that were caused by the motor vehicle accident. Therefore, plaintiff did not have an affirmative duty to rebut their conclusions in order to survive defendants' motions for summary disposition on the issue of causation.

Concerning plaintiff's first party claim, State Farm also relies on two reports prepared by its orthopedic experts. The first expert, Dr. Burkhardt, opined that plaintiff had "cervical strain, left knee contusion, myofascial pain, closed head injury/concussion" that "was caused by this accident" but in Burkhardt's opinion plaintiff "has reached pre-injury status." Burkhardt concluded that plaintiff's injuries had resolved, but he agreed that plaintiff was injured in the accident. Therefore, while Burkhardt's report is affirmative evidence that plaintiff was required to rebut to prevail against State Farm's motion, the report actually supports plaintiff's position in its third party claim against Visser. Similarly, the second orthopedic expert, Dr. Schneeberger, found that plaintiff had left knee strain/sprain, lumbar and thoracic strains and sprains, cervical strain and sprain, and a history of traumatic brain injury and that his condition was caused by the December 11, 2013 accident. Schneeberger then concluded that "the strain and sprain of the left knee, strain and sprain of the thoracic and cervical spine" would have temporarily impaired plaintiff "for four to six months, after which time he would have reached maximum medical improvement." As with Burkhardt's report, this report was affirmative evidence that plaintiff was required to rebut to survive State Farm's motion, but the report supports plaintiff's position on the issue of causation in his third party tort claim against Visser.

Plaintiff submitted evidence that his injuries had not resolved to rebut the conclusions of State Farm's orthopedic experts. His primary physician, Dr. Houchin, wrote a letter in August of 2014 stating that plaintiff's neck, shoulder, and occipital pain began immediately following the accident and that while plaintiff had preexisting knee pain, it was exacerbated by the accident. Plaintiff was required to undergo physical therapy where his therapist noted spasms, muscle pain, and limited cervical range of motion in various examinations in the months immediately succeeding the accident. It was established by documentary evidence that Houchin excused plaintiff from work on account of his injuries for nearly an entire year after the accident. In April of 2014 plaintiff's headaches and neck pain were documented by physical therapists and by Houchin. In May of 2014 plaintiff's occipital nerve problems and myofascial muscle pain began to be diagnosed on a consistent basis. A rational trier of fact could construe the early notations of plaintiff's muscle spasms in December 2013 and January 2014 as a symptom or precursor to the myofascial muscle pain that began being diagnosed on a regular basis in the spring of 2014.

Based on plaintiff's medical records from his own treating physicians, a rational trier of fact could conclude that contrary to the conclusions of State Farm's orthopedic examiners, plaintiff continued to experience both knee and thoracic injuries that arose out of the motor vehicle accident after April of 2014 and that he continued to experience cervical injuries as a result of the motor vehicle accident after October of 2014. Neither defendant presented unrebutted evidence that definitively negated an essential element of either plaintiff's first party no-fault claim or his third party tort claim on the issue of causation. Therefore, we reverse the trial court's orders granting defendants summary disposition.

Additionally, although the trial court did not rule on whether plaintiff had presented sufficient evidence of a threshold injury to survive Visser's motion for summary disposition, because the issue was raised by plaintiff at both the trial court and on appeal, we address the issue and determine that plaintiff did present sufficient evidence to survive Visser's motion on this basis as well.[1] The No-Fault Act, MCL 500.3101 *et seq*, limits third party tort liability for noneconomic loss caused by "ownership, maintenance, or use of a motor vehicle" to situations in which "the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). The elements of a serious impairment of body function are (1) an objectively manifested impairment, i.e., "one observable or perceivable from actual symptoms or conditions," (2) the impairment affected an important body function, i.e., a body function that has great value, significance, or consequence to the person affected, and (3) the impairment of the body function affected the person's general ability to lead her normal life. *McCormick v Carrier*, 487 Mich 180, 195-196, 199; 795 NW2d 517 (2010).

In interpreting the first prong, "an objectively manifested impairment," the Supreme Court has held that an " 'objectively manifested' impairment is commonly understood as one observable or perceivable from actual symptoms or conditions." *McCormick*, 487 Mich at 196. The focus must be on "how injuries affected a particular body function." *Id.* "[P]laintiffs must 'introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering.' " *Id*. at 198 quoting *DiFranco v Pickard*, 427 Mich 32, 74; 398 NW2d 896 (1986). "[S]howing an impairment generally requires medical testimony." *Id*. at 198.

Plaintiff relies heavily on the fact that various medical examiners noted muscle spasms, swelling or tenderness on his knee, and trigger points in various medical records. These are conditions that have been recognized as satisfying the objective manifestation requirement. *Guerrero v Smith*, 280 Mich App 647, 663-664; 761 NW2d 723 (2008) (finding that "[t]his Court has observed that muscle spasms . . . may qualify as objective manifestations"). Additionally, there was medical documentation from plaintiff's treating physicians of how his injuries affected particular body functions. A CT scan taken the day of the injury did show mild disc bulges. His physical therapy notes from December 31, 2013 state that he was having difficulty walking, had decreased range of motion, and had difficulty getting into his car. Similar findings were documented by his physical therapist in notes dated January 15, 2014. Physical therapy notes in March of 2014 noted that while his cervical range of motion was increasing it was still limited, and plaintiff needed "a lot of cuing for correct performance of neck exercises." Plaintiff's primary care physician also determined that he should be disabled from working for nearly all of 2014. Even the medical examiner hired by State Farm, Zafar, concluded that the accident could have caused whiplash resulting in mechanical strain and that plaintiff suffered a temporary impairment as a result of the accident. This evidence leaves open a question of fact on the first *McCormick* prong of whether plaintiff established an objectively manifested impairment. See *Abir Chouman v Home Owners Ins Co*, 293 Mich App 434, 442-445; 810

---

[1] Even when an issue is not addressed by the trial court if the issue is raised before it then that issue is properly preserved for appellate review. *Loutts v Loutts*, 298 Mich App 21, 23-24; 826 NW2d 152 (2012).

NW2d 88 (2011) (finding that when the plaintiff's physician found "muscle spasms, pain, numbness, and restricted range of motion" and that when the plaintiff had a bulging disc that was shown in medical imaging there was a genuine factual dispute on whether the plaintiff suffered an objectively manifested impairment").[2]

The second *McCormick* prong of whether the objectively manifested impairment is of an important body function is "an inherently subjective inquiry" because "[w]hether a body function has great 'value,' 'significance,' or 'consequence' will vary depending on the person." *McCormick*, 487 Mich at 199. However, "the spine is an extremely important part of every person's body." *Abir Chouman*, 293 Mich App at 444. Therefore, the disc bulges and evidence of limited cervical mobility constitute impairments of an important body function. Additionally, physical therapy records stating that plaintiff used to walk two miles a day prior to the accident and his deposition testimony that his pre-accident lifestyle included taking out the dogs, taking out the trash, and vacuuming show that his knee, a body function critical to all those activities, was an important body function to him.

With regards to the final prong on whether the impairment affected plaintiff's ability to lead his normal life, the inquiry is whether the impairment had "an influence on some of [plaintiff's] capacity to live in [his] normal manner of living." *McCormick*, 487 Mich at 202. The determination "requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis." *Id.* Plaintiff does not need to show that the impairment caused him to completely cease a pre-accident lifestyle but simply that some of his ability to live in his normal manner of living has been affected. *Id.* at 202-203.

Plaintiff's physical therapy records show that after the accident he was unable to walk his usual two miles and that getting into his vehicle was more painful. The physical therapy notes also state that due to the injuries, plaintiff avoids stairs and slippery or uneven surfaces and that his pain increases if he sits for long periods of time. Plaintiff testified at his deposition that he works in real estate. Being unable to sit for long periods of time would undoubtedly affect his ability to function at his real estate work. His doctor disabled him from working for most all of 2014. There was sufficient evidence to create a genuine issue of material fact regarding whether some of plaintiff's ability to live in his normal manner of living before the accident was affected as a result of injuries sustained in the December 2013 accident.

---

[2] In *Abir Chouman*, the defendant-insurer had appealed the trial court's grant of a directed verdict to plaintiff. This Court reversed because defendant presented testimony from its own physician whose conclusions differed from those of plaintiff's physician. However, this Court recognized that the evidence plaintiff presented, along with that presented by defendant, created a question of fact for the jury to resolve. 293 Mich App at 441-444.

Plaintiff presented sufficient evidence for a rational trier of fact to conclude that he suffered a threshold injury, a serious impairment of an important body function, to assert a third party tort claim against Visser.

Reversed and remanded.  We do not retain jurisdiction.


/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro